IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CINCINNATI INSURANCE COMPANY,    )
                                 )
           Plaintiff,            )
                                 )
vs.                              )        No. 07-3164
                                 )
THOMAS SHANAHAN and              )
COLETTE KAUFFMAN,                )
                                 )
           Defendants.           )

OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Plaintiff's motion for summary

judgment and on Defendant Thomas Shanahan's cross-motion for summary

judgment.

This declaratory judgment action was brought pursuant to the Court's

diversity of citizenship jurisdiction.  Plaintiff Cincinnati Insurance Company

seeks a declaration that an insurance policy issued to Thomas Shanahan

does not require it to provide coverage to Shanahan for a lawsuit brought

by Colette Kauffman.   The Kauffman lawsuit asserts claims against

Shanahan for defamation, interference with her employment and intentional infliction of emotional distress.  Kauffman has been dismissed as a Defendant in this action.  The Plaintiff alleges it has no obligation to provide coverage to Shanahan because all of Kauffman's claims are based on intentionally harmful conduct.

## I. BACKGROUND

### (A)

On November 9, 2006, Colette Kauffman filed her lawsuit against Thomas Shanahan in Sangamon County, Illinois.  See Kauffman v. Shanahan, Case Number 2006 L 00292.  The Kauffman complaint alleges that Shanahan and Kauffman had a "confrontation" in October of 2005 at a basketball game for Christ the King School, which is part of the Springfield Diocese.  The Kauffman complaint alleges that, following that confrontation, Shanahan engaged in a "campaign to discredit Kauffman" and to end her career at the School.  It further alleges that "Shanahan engaged in verbal conversations with school representatives and other school parents, in which he made false accusations questioning Kauffman, her

ability to perform her work, and certain alleged personal habits and characteristics, including making the false assertion that Kauffman has a drug or alcohol addiction problem."

The Kauffman complaint attached and relied on a letter dated November 10, 2005 from Shanahan to Mrs. Kolb, the School principal, with copies to Monsignor Lantz and School Board Members.  It alleges that Shanahan met with the Springfield Diocese and disparaged Kauffman's abilities as athletic director and teacher, and intentionally tried to interfere with her employment by encouraging the Diocese to terminate her employment or not renew her contract following the 2005-2006 school year. Kauffman asserted that "Shanahan had no factual basis to support the claims" and that Shanahan had actual knowledge his statements about Kauffman were false or made with gross disregard as to their truth.  The Kauffman complaint alleges that Shanahan's "intentions and purposes, with respect to all activities identified. . . above, were to cause injury and punishment to Kauffman for the October 2005 confrontation, as well as previous disagreements" and that he acted "solely and intentionally for the

3

purpose of causing injury to Kauffman."

Each count of the Kauffman complaint contains allegations that Shanahan acted intentionally to cause harm to Kauffman.  It seeks over $500,000 in compensatory damages, plus punitive damages of over $250,000 for Shanahan's "outrageous conduct."

(B)

The Plaintiff issued a Homeowner's insurance policy, No. HR 8392901, to Thomas and Gloria Shanahan , which was in effect during the relevant time.   Shanahan also purchased Personal Umbrella Liability Insurance coverage, which was added by endorsement to the Homeowner's policy ("the Umbrella").   The Homeowner's policy and the Umbrella generally provide coverage for bodily injury, property damage, and personal injury, all as defined by the policy provisions.  The Homeowner's policy defines "bodily injury" to mean "bodily harm, sickness or disease."  The Umbrella defines "bodily injury" to mean "bodily harm, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury sustained by a person, including care, loss of services or death arising out of

4

any of these at any time."  Both the Homeowner's policy and Umbrella define "property damage" to include "physical injury to or destruction of tangible property" and loss of use of tangible property.

The Homeowner's policy defines "personal injury" to mean "injury to others arising out of libel, slander, defamation of character, false arrest, willful or false detention or imprisonment, wrongful eviction or entry, malicious prosecution, humiliation, or invasion of privacy and, if arising out of any of these, mental anguish, mental injury, or shock.  The Umbrella defines "personal injury" to include injury arising out of libel, slander, or defamation of character.  The Homeowner's policy provides coverage for a suit brought against any insured for damages because of bodily injury, personal injury or property damage arising out of an occurrence to which this coverage applies.

The Homeowner's policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."   The Umbrella defines "occurrence" as (1) an "accident, including continuous, or repeated exposure to substantially the

same general harmful conditions" that results in "bodily injury" or "property

damage" or (2) an offense that results in "personal injury."

Coverage under the Homeowner's policy is subject to the following

"Expected or Intended injury exclusion":

> A.  *Coverage E – Bodily Injury, Personal Injury and Property Damage Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury," "personal injury" or "property damage":*
>
> > 1.  *Which may reasonably be expected to result from the intentional or criminal acts of one or more "insureds" or which is in fact expected or intended by one or more "insureds," even if the injury or damage is of a different degree or type than actually expected or intended.*

Coverage under the Homeowner's policy is subject to an exclusion for bodily

injury, personal injury or property damage "arising out of . . . physical or

mental abuse."  Coverage under the Umbrella is subject to the following

"Expected or Intended injury" exclusion:

> 9.  *Expected or Intended Injury*
>
> > *"Bodily injury", "property damage" or "personal injury" which may reasonably be expected to result from the intentional or criminal acts of any "insured" or which is in fact expected or intended by any "insured" even if the injury or damage is of a different degree or type than actually intended or expected.*

6

Coverage under the Umbrella is subject to the following

"Employment-Related Practices exclusion":

> 6.   *Employment – Related Practices*
>
>      *"Bodily injury" or "personal injury" to:*
> a.   *A person arising out of any:*
>      *(1)   Refusal to employ the person;*
>      *(2)   Termination of that person's employment; or*
>      *(3)   Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . .*
>
> *This exclusion applies:*
> a.   *Whether any "insured" may be held liable as an employer or in any other capacity; and*
> b.   *To any obligation to share damages with or repay someone else who must pay damages because of the injury.*

Coverage under the Umbrella is subject to the following "Known Falsity

exclusion":

> 10.   *Falsity, Prior Publication, Willful Violation*
>      *"Personal injury" arising out of:*
> a.   *Oral or written publication of material if done by or at the direction of any "insured" with knowledge of its falsity. . .*

(C)

Shanahan sent the Kauffman complaint to the Plaintiff in December

7

2006, asking the company to provide defense and/or indemnity for the lawsuit. In a letter dated December 12, 2006, the Plaintiff told Shanahan it had retained the law firm of Heyl Royster Voelker & Allen of Springfield, Illinois to defend Shanahan in the Kauffman case. The letter stated that Shanahan the right to involve personal counsel to assist in his defense. It further provided that Plaintiff would be investigating his claim for coverage "under a full and complete reservation of rights," including the right "to deny insurance coverage for all or any portion of your claim if merited."

In a letter dated December 21, 2006, the Plaintiff supplemented its previous reservation of rights letter to Shanahan by noting "potential coverage concerns" it had discovered. The letter cited the exclusion for damage that an insured may reasonably expect to occur, or intend to occur. The letter reiterated that Plaintiff would be investigating Shanahan's claim for coverage "under a full and complete reservation of rights. This includes reservation of Cincinnati's rights to deny insurance coverage for all or any portion of your claim if merited."

In a letter dated February 6, 2007, the Plaintiff denied coverage for

8

the Kauffman lawsuit and withdrew its offer to provide a defense to Shanahan. The letter provided that Plaintiff would pay Heyl Royster's defense fees for 30 days from that date, and stated "[t]his 30-day time period will give you time to decide whether to continue with that lawyer at your own expense or to hire a different lawyer for your defense case." Between February and June 2007, the Plaintiff and Shanahan engaged in various communications to avoid coverage litigation over the lawsuit.

The Plaintiff filed its complaint for declaratory judgment. Shanahan filed his answer and affirmative defenses. He has since waived and withdrawn his affirmative defenses.

The Plaintiff seeks the entry of summary judgment on the basis that the policy provides no coverage for Kauffman's lawsuit because all of her claims are based on intentionally harmful conduct. Shanahan has filed a cross-motion for summary judgment, wherein he requests the Court to rule in his favor because defamation, libel and slander are by their nature "intentional conduct," and thus the policy cannot be read to exclude damages arising from any and all intentional acts by the insured.

9

## II. DISCUSSION

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists.  Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).

The Court must "look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy."  Crum and Forster Managers Corp. v. Resolution Trust

Corp., 156 Ill.2d 384, 393, 620 N.E.2d 1073, 1079 (Ill. 1993).  "The allegations of the underlying complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured."  Illinois State Medical Ins. Services, Inc. v. Cichon, 258 Ill. App.3d 803, 808, 629 N.E.2d 822 (3d Dist. 1994) (citations omitted).  "The insurer's duty to defend is much broader than its duty to indemnify its insured."  Crum and Forster Managers Corp., 156 Ill.2d at 393-94, 620 N.E.2d at 1079.

"What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers."  Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co., 260 F.3d 742, 745 (7th Cir. 2001).

In support of its motion for summary judgment, the Plaintiff notes that Kauffman's defamation claim alleges Shanahan made false statements to the School, the Diocese and others that falsely questioned Kauffman, impugned her ability to perform her job, and implied that she had a drug or alcohol addiction.  Kauffman asserts that Shanahan had no factual basis for

11

his statements and deliberately made the statements for the purpose of hurting her in retaliation for their past disagreements.

The Plaintiff contends that, because the Homeowner's policy provides coverage for personal injury only if the alleged injury was caused by an "occurrence," defined to mean an "accident," it does not provide coverage in a case like this which does not involve an accident. Because the alleged conduct does not qualify as an occurrence, therefore, it is not covered by the Homeowner's policy. The Plaintiff asserts that the same is true regarding the Umbrella because, like the Homeowner's policy, it specifically excludes coverage for any injury that the insured intended to cause. Shanahan contends that Plaintiff's express inclusion of certain intentional torts bars and prohibits it from excluding coverage under alternative policy provisions. He asserts that the insurer cannot escape its obligation to defend a claim based on defamation, libel, and slander by relying on a policy provision denying coverage for intentional conduct. According to Shanahan, one policy provision that provides coverage for intentional acts like defamation, libel and slander is inherently inconsistent with another provision that

denies coverage for intentional conduct.  He claims this inconsistency must be read against the Plaintiff and the policy must be interpreted in favor of coverage.  In other words, Shanahan states that the policy cannot take back with one hand what it gave with another.     The policy does not contain an internal inconsistency.  An intent to injure or expectation of injury is not an element of the tort of defamation.  <u>See</u> <u>Eastern Atlantic Insurance Co.</u>, 260 F.3d at 746-47.  "[D]efamation is often not intended or expected to injure anyone."  <u>Id.</u> at 746.  "The defamer may have made a good-faith though inadequate attempt to conceal the victim's name, may have thought the victim's reputation already impaired beyond possibility of further damage . . . or the most common case, may have thought the defamatory statement true, in which event there would be no injury in a legal sense." <u>Id.</u> (internal citation omitted).

Because defamation does not always involve an intentional act, the provision of coverage for an "occurrence" of defamation is not inconsistent with the exclusion from coverage of defamatory statements when they are made intentionally.  <u>See</u> <u>id.</u> at 747 ("Because the exclusion, therefore,

13

though broad, is not so broad as to make the coverage illusory, it must be enforced according to its terms"). Thus, there is no inconsistency or ambiguity.

It is the allegations of the underlying complaint which are important. There, Kauffman alleged that the statements were made for the purpose of harming her. Thus, because the injury was not caused by an occurrence, or "accident," the Homeowner's policy does not provide coverage. Because Shanahan intended to cause the injury or reasonably expected it to result, moreover, the Umbrella does not provide coverage. Contrary to Shanahan's argument, there is no internal inconsistency because defamation is possible without an intent to injure or expectation of injury. See Eastern Atlantic Insurance, 260 F.3d at 746.

Thus, Shanahan is not entitled to coverage for Count I of the Kauffman complaint because it does not allege an "occurrence" under the Homeowner's policy. The exclusion also applies under both policies because Shanahan intended or reasonably expected the injury to occur. See id. at 746 (noting that the policy prevents coverage for "tortious conduct in which

there is an intent to injure").  The Plaintiff correctly argues the crucial allegation in the underlying complaint is not that Shanahan acted intentionally; it is that he acted with the sole and specific intent to cause injury to Kauffman.

The exclusions in the policy apply as to Count I of Kauffman's lawsuit. It is also worth noting that requiring coverage in this case may violate Illinois public policy.  See Lincoln Logan Mut. Ins. Co. v. Fornshell, 309 Ill. App.3d 479, 483, 722 N.E.2d 239, 242 (4th Dist. 1999) ("An agreement to indemnify against intentional misconduct would, as a general rule, be contrary to public policy and unenforceable").

Shanahan's argument that Counts II (interference with prospective employment contract )and III (intentional infliction of emotional distress) of the Kauffman complaint is covered by the policy is based on the same rationale.  The allegations of Count II do not qualify for coverage because they do not fit within any definitions of "bodily injury," "property injury" or "personal injury" contained in the policies.  Moreover, the injury was not based on an "occurrence" and it is also excluded because it was the

15

"expected or intended injury."  Similarly, there is no coverage for Count III because the alleged conduct was intentionally harmful.

Ergo, the Plaintiff's motion for summary judgment [d/e 14] is ALLOWED.  The Defendant's cross-motion for summary judgment [d/e 17] is DENIED.

The Clerk will enter judgment in favor of the Plaintiff.

ENTER: September 26, 2008

FOR THE COURT:

s/Richard Mills
United States District Judge

16